**NATIONAL ASSOCIATION OF BLUE SHIELD PLANS and Group Medical & Surgical Service, Appellants,**

v.

**UNITED BANKERS LIFE INSURANCE COMPANY, Appellee.**

**No. 21920.**

United States Court of Appeals
Fifth Circuit.

June 16, 1966.

Philip R. Overton, Austin, Tex., Melville Owen, A. Donham Owen, San Francisco, Cal., Howard Hassard, San Francisco, Cal., of counsel, for appellants.

Mark Smith, Smith & Smith, Lubbock, Tex., for appellee.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, District Judge.

JONES, Circuit Judge:

The appellant, National Association of Blue Shield Plans, is a non-profit Illinois corporation. It is an association of local nonprofit organizations which provide hospitalization and health-care insurance in the areas in which they operate. Each of these local operations, which are called plans, is sponsored by a medical society in its locality. The appellant, Group Medical & Surgical Service, is the Texas component. One of the benefits flowing from membership in the Association is the right to use its service marks in naming and promoting the member's insurance policies.

The Association owns the following federally registered service marks:

| No. 557,037 | word mark | Blue Shield |
| No. 557,040 | word mark | Blue Shield [1] |
| No. 562,430 | symbol mark | a blue shield |
| No. 591,778 | symbol mark | a blue shield with a caduceus thereon |
| No. 617,304 | symbol mark | a shield with a caduceus thereon |

The first four marks were found to be uncontestable under 15 U.S.C.A. § 1115 (b), and all the marks were found to be nondescriptive of medical insurance. None of these findings have been specified as erroneous.

---

[1]. No. 557,037 is registered for "furnishing medical care on a prepayment basis," which is class 100. No. 557,040 is registered for "underwriting the expense of medical care," and classified as 102. The remaining marks are registered in class 102, although the phraseology of the description varies to some extent.

Group Medical owns as trustee for the National Association the following Texas registrations:

| | |
|---|---|
| No. 14,255 | a shield symbol with Group Medical's name thereon |
| No. 16,609 | a blue shield |
| No. 23,418 | a shield with a caduceus thereon |
| No. 23,419 | the word mark Blue Shield |
| No. 23,420 | a shield symbol |

The appellee, United Bankers Life Insurance Company, markets hospitalization insurance which is of the same general sort as that provided by the Blue Shield plans. Some of this insurance has been advertised and sold under the designation Red Shield or Improved Red Shield. United has used a shield symbol, bearing a white cross with the word United above the cross and the word Bankers below, in conjunction with the advertising and sale of these policies. The word and symbol marks have been represented in various colors, including the color blue. Upon complaint by the National Association, the district court found that the words "red shield" and "improved red shield" and the shield symbol were colorable imitations of the Association's marks and were likely to cause confusion when printed in the color blue, but not otherwise.[2] It is from these findings and the injunction entered pursuant thereto that the National Association appeals.

United Bankers concedes that use of its marks in the color blue constituted infringement, but asserts the district court was correct in finding their use in other colors was not likely to cause confusion. It stresses the well-settled law that findings as to likelihood of confusion are factual and not to be overturned unless clearly erroneous. E. g., Sun-Maid Raisin Growers v. Sun-aid Food Products, Inc., 5th Cir. 1966,

356 F.2d 467, and cases cited therein. We are asked not to "fetter the ancient 'Red Shield' which was carried in freedom and with honor by Sir Galahad according to legend—and by Sir Lancelot. * * *" We find the shield must, indeed, be fettered to the extent that it is sought to be used to designate hospitalization insurance.

The confusion which is possible here is of two sorts, that which is commonly designated confusion of goods and that which is called confusion of business. That is, a purchaser of one of United's Red Shield plans might be under the impression that he was purchasing one of Group Medical's extensively advertised and highly regarded, although perhaps only vaguely remembered, Blue Shield policies,[3] or he might think that the Red Shield service or, particularly, the Improved Red Shield policy was a modification or extension of the Blue Shield insurance of which he had heard. In the latter case, the confusion would be in the assumption that both the blue and the red emanated from the same source. See generally 3 Callman, Unfair Competition & Trade-Marks §§ 80.1, .2 (2d. ed. 1950).

The district court found both types of confusion to be likely, but only where the accused marks were used in the color blue. It is this distinction

2. 231 F.Supp. 904 (W.D.Tex.1964).

3. This postulates that the parties are in competition. 3 Callman, Unfair Competition & Trade-Marks § 80.3 (2d ed. 1950). There was no specific finding to this effect below, but it is clearly the case, and was so assumed by the district court.

which we cannot understand and must find clearly erroneous.

The evidence shows that United Bankers commenced using the marks here in question in 1950 at the suggestion of the manager of its hospitalization department. The manager had been active in the hospitalization-insurance field before going with United Bankers. While there is no testimony that the manager knew of the Blue Shield plans, it is inconceivable that he could have been associated with hospitalization insurance and not have been at least aware of if not familiar with a group which held such a prominent position in the field.[4]

United continued extensive use of the Red Shield marks until 1955. At that time, it changed its promotional technique so as to deemphasize direct mail campaigns. It was in these direct mail advertisements that the Red Shield predominated. Shortly prior to this change in United Bankers' selling program, the National Association had first learned of the Red Shield and had notified United that it was infringing the Blue Shield service marks. It is brought out that about this same time, the National Association brought suit against another alleged infringer, National Bankers Life Insurance Company, for infringement by its Blue Seal policies. National and United were co-tenants of the same office building and the presidents of the two companies were acquainted. It is established that the president of United was aware of the pending litigation against National. Although the president of United testified that his restriction of Red Shield advertisement was in no way connected with the activities of the National Association, the inference that he acted to forestall an action for infringement is permissible.

Whatever may have motivated the partial disuse of the red shield in 1955, it was renewed in 1959, because, in the words of United's president, "I thought I could do better with the old system, and then I started under the old program of advertising again."

The district court made no finding on the question of intent on the part of United Bankers to confuse and deceive the public, but the evidence would require a finding of such an intent. Indeed, it seems clear from the similarity of the marks and the conduct outlined above that the purpose of United Bankers was to use marks as close as possible to those of the National Association, so as to appropriate the good will and good name of the blue shield, while maintaining just sufficient a distinction between the marks to confuse, if possible, both the public and the courts. Where such a purpose appears, the courts will follow the alleged infringers' judgment and find a likelihood of confusion. Tisch Hotels, Inc. v. Americana Inn, Inc., 7th Cir. 1965, 350 F.2d 609, 613; Fleischmann Distilling Corp. v. Maier Brewing Co., 9th Cir. 1963, 314 F.2d 149, 158, cert. den., 374 U. S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053; Baker v. Simmons Co., 1st Cir. 1962, 307 F.2d 458, 465; National Van Lines v. Dean, 9th Cir. 1956, 237 F.2d 688, 692; American Chicle Co. v. Topps Chewing Gum, Inc., 2nd Cir. 1953, 208 F.2d 560; Miles Shoes, Inc., v. R. H. Macy & Co., 2nd Cir. 1952, 199 F.2d 602, cert. den., 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345; Northam Warren Corp. v. Universal Cosmetic Co., 7th Cir. 1927, 18 F.2d 774.

This is the view taken in the Restatement of Torts, Restatement, Torts § 729 (b), and comment f (1938), and substantially followed in the tentative draft of the Restatement Second, Restatement, Second, Torts, § 729(b), and comment i (Tent.Draft No. 8, 1963). We quote from the latter source:

> If he adopts his designation with the intent of deriving benefit from the

---

4. There were well over sixteen million participants in Blue Shield plans in 1950, when the Red Shield came into existence. Of these sixteen million, 500,000 were Texans.

reputation of the other, however, his intent may be sufficient to justify the inference that confusion is likely. Since he was and is intimately concerned with the probable reaction of prospective purchasers in the market, his judgment manifested prior to the controversy is highly persuasive. His denial that his conduct will achieve the result intended by him will ordinarily carry little weight.

This principle of law has been well expressed by this Court in Aetna Casualty & Surety Co. v. Aetna Auto Finance, Inc., 5th Cir. 1941, 123 F.2d 582, cert. den., 315 U.S. 824, 62 S.Ct. 917, 86 L.Ed. 1220 (1942), where it is said:

> But more significant and important than the fact that this is so, [that the parties were in competition to a degree] is the purpose evidenced by the choice, by this new comer into the field * * *, of name and advertising matter. This purpose is to project itself into that business arena panoplied in a name already favorably known, rather than to come into it on its own merits, and slowly building, here a little, there a little, establish its own place. * * * [W]here as here it plainly appears that there is a purpose to reap where one has not sown, to gather where one has not planted, to build upon the work and reputation of another, the use of the advertising or trade name or distinguishing mark of another, is in its nature, fraudulent and will be enjoined.

We do not rest our conclusion that the marks are confusingly similar solely on the intention of United Bankers, however. The shield symbol of Blue Shield has been registered both in the color blue and without color being specified. It has been registered with a caduceus superimposed and without superimposition. It has been used, and so registered under various State statutes, with a caduceus, with nothing, with the name Group Medical & Surgical Service, and with a host of other names appearing on the Shield,

and in every color. A good part of the advertisement, in fact, has been and is in newspapers or on television where color is seldom shown. While the blue shield is of the celtic type, the top portion being concave upwards, and the red shield has the configuration known as heraldic, the top being composed of two arcs forming a point at their intersection, the shapes are generally similar. The impression or mental impact conveyed by both, at least to one not versed in heraldry, must be that of a shield, pure and simple, not of a particular type or configuration of shield. The word "shield" is the dominant portion of both word-marks. A change in the modifying color word from blue to red cannot avoid confusion, at least where both are applied to services so similar, indeed, almost identical to the public mind, as in the present case. We need only to compare the two symbols as they appear in the exhibits which are before the Court and to mentally juxtapose the two word-marks as they appear in print and as they appear to the ear to find that confusion is not only likely, but probable. Frostie Co. v. Dr. Pepper Co., 5th Cir. 1965, 341 F.2d 363. The use of both word and symbol marks—each suspect and probably impermissible alone—in conjunction, is conclusive.

The president of United testified that he made no distinction as to the color in which the accused marks were printed. He testified that the percentage of replies did not depend upon the color. No distinction as to color appears tenable to us, either in the purpose of United or in the effect on the public. It is the words and the symbols which are confusingly similar, not the ink applied by the printing press. The cause must be remanded to the district court for disposition in accordance with this opinion.

A motion to strike portions of United Bankers' brief has been carried with the case. As no useful purpose would be served by passing upon the merits of this motion, it is denied.

Reversed.