**BEEF/EATER RESTAURANTS, INC.,**
d/b/a Beefeaters and Beefeater
Restaurants, Appellant,

v.

**JAMES BURROUGH LIMITED et al.,**
Appellees.

No. 25204.

United States Court of Appeals
Fifth Circuit.

July 31, 1968.

Alvin N. Siegel, Samuel N. Frankel, Atlanta, Ga., for appellant.

3. See notes 1 and 2.

Kirk M. McAlpin, Atlanta, Ga., Henry W. Lauterstein, New York City, for appellees.

Before BROWN, Chief Judge, BELL, Circuit Judge, and HOOPER, District Judge.

HOOPER, District Judge.

The sole question in this case is whether or not the trial judge erred in granting to appellees (plaintiffs in the court below) a summary judgment, based on affidavits, depositions, pleadings and documentary evidence.

Appellees (James Burrough Limited and Kobrand Corporation) brought an action seeking injunction in the District Court against Beef/Eater Restaurants, Inc., doing business as Beefeaters and Beefeater Restaurants (appellant) alleging unfair competition by the latter consisting of trademark infringement and dilution of plaintiffs' trademark.

The district judge found that there was no substantial issue of fact and granted a summary judgment in favor of appellees (272 F.Supp. 489—Northern District of Georgia, 1967). His opinion contains exhaustive findings of fact. Motion to reconsider filed by the defendant was denied.

A repetition here of the complete findings of fact by the trial judge is not necessary. The only findings to which appellant takes exception are those relating to the likelihood of confusion, and the alleged secondary meaning of the words and the symbol used by appellee.

(1) Point One in appellant's brief is the following: "Disputes between parties as to trademark infringement, and unfair competition cases, can rarely be determined satisfactorily on a motion for summary judgment." Whether or not the granting of such motions is rarely upheld is not the question; each case must be decided upon its particular facts and in many instances the granting of such judgments have been upheld. See Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494 (2nd Cir. 1962), National Association of Blue Shield Plans v. United Bankers Life Insurance Company, 362 F.2d 374 (5th Cir. 1966), and cases therein cited.

(2) The provisions of the amendment to Rule 56, Federal Rules of Civil Procedure effective July 1, 1963 are quite significant here, a portion of the same reading as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Appellant (defendant in the court below) now makes various contentions concerning the facts in the record which were not made by affidavits or offer of proof in the trial court.[1]

1. Appellant in the trial court relied on two brief affidavits of Seymour Cristal and Bernard Cristal, officers and stockholders in Beefeater Restaurants, Inc., which are more significant because of facts omitted than for facts stated.

There is no express denial of appellees' affidavits as to the origin and use by them of the trademark in question, their sales in England and America through the years, of the extensive advertisements and other basic factors, only the conclusion and inferences from the same being denied. As to appellant's adoption of the Beefeater trademark they contend it was taken from Webster's Dictionary and without knowledge of its use by appellees, but reference to that dictionary will disclose that, while it is true a brief definition of "Beefeaters" is also contained in appellant's menus, the picture of a "Beefeater" in the dictionary does not follow the picture used in connection therewith, but on the other hand is identical with the picture of a "Beefeater" contained in appellant's trademark, being even of the same red color.

The background and purposes of the Amendment to Rule 56 are given in the case of Robin Construction Company v. United States, 345 F.2d 610 (3rd Cir. 1965), and concludes with these words: "This amendment must be made fully effective."

The issues as to likelihood of confusion between the trademarks and the issue of secondary meaning must therefore be considered in the light of the above.

(3) Upon the question as to likelihood of confusion the trial judge ruled that the following was a necessary inference from the undisputed fact in the Record, the trial judge stating (272 F.Supp. 493):

> "The public has been, or is likely to be, confused, misled, and deceived by defendants' conduct into the belief that the defendant through its use of the name 'Beefeater', as aforesaid, has been or is in some way associated, connected with, or sponsored by or approved by the plaintiffs."

■ Appellant in contending that no witness testified as to the likelihood of confusion overlooks the principle of law that the trial judge, by inspection of the trademarks, may himself determine, and must determine, the likelihood of confusion. See National Association of Blue Shield Plans v. United Bankers Life Insurance Company, 362 F.2d 374, at p. 378 (5th Cir. 1966).

■ But, actual confusion need not be proven and the undisputed facts in the Record demand an inference that confusion was likely. The trial judge stated as follows (272 F.Supp. 494):

> "22. The use of the word Beef/Eater, Beefeaters, Beefeater and the Beefeater Guard Symbol by defendant in connection with its restaurants is so similar to plaintiffs' trade name Beefeater and the Beefeater Guard Symbol that confusion is likely to result so as to cause the public erroneously to believe that the defendants' restaurants are in some manner connected with the plaintiffs and, un-

less enjoined, the likelihood of confusion will increase."

One illustration of a clear cause of confusion is shown by a comparison of the menu in use by appellant, wherein "Beefeater" is referred to as "a corp of men to act as bodyguards" to King Henry VII of England in 1485. The same language appears from a label in use by appellees on its Beefeater gin, and more importantly, there is placed over the same a picture of one of the traditional "Beefeaters" identical as to form and color, with that shown on the label of the gin packaged by Kobrand Corporation.

■ It is true that appellant operates a restaurant and appellees on the other hand make and vend gin. Both are consumable and it is repeatedly held that the parties need not be in competition and that the goods or services need not be identical. See Continental Motors Corporation v. Continental Aviation Corporation, 375 F.2d 857, 861 (5th Cir. 1967); Fleischmann Distilling Corporation v. Maier Brewing Company, 314 F. 2d 149 (9th Cir. 1963); Chemical Corporation of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5th Cir. 1962).

■ It is significant that appellant in the brief counter affidavits filed in the trial court nowhere expressly denied that plaintiff's trademark had acquired a secondary meaning, but even had the same been denied the real question is this: Was the trial court under all the facts in the Record legally compelled to conclude that appellees' trademark had in fact acquired a secondary meaning? Our answer is in the affirmative.

The following rule is laid down in Callmann on Unfair Competition, 2nd Ed., p. 1198:

Trademarks

"* * * are driven by the trademark owner's efforts to popularize his mark. The commercial potency of the trade-mark is directly proportionate to the investment and the energy with which it is developed. The expenditure of money gives rise to a reason-

able prospect or expectation of popularity. If, before it is realized, a new competitor intervenes, the presumptive popularity, like the presumptive trade, will be protected." Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp. [5 Cir.], 254 F.Supp. 743, p. 749 (1966).

The foregoing has particular reference to the question as to whether appellees' trademark had acquired a secondary meaning in Georgia, as the evidence on that point is not as strong as the evidence as to secondary meaning acquired in the United States as a whole.[2]

The probative value of evidence covering advertisements and other promotional devices by the owner of a trademark as proving secondary meaning and the likely confusion is pointed out by the court in Tisch Hotels, Inc. et al. v. Americana Inn, Inc. et al., 350 F.2d 609, at p. 612 (7 Cir. 1965).[3]

(5) The motion for summary judgment is a very useful device to avoid a plenary trial. However, it is a device that must be used with unusual care. Where a case is to be tried before the court without a jury, it is frequently just as easy and more satisfactory to try the case as to decide it upon such a motion. By use of interrogatories, requests for admission and pretrial, the issues can quickly and definitely be narrowed and a proper determination made as to whether or not there is any disputed issue of fact. But, in the instant case, it appears that the facts in the Record which furnish the bases for the trial judge's conclusions, are not in dispute, and the conclusions from such facts are required as a matter of law.

Affirmed.

2. The contention was not made by appellant in the lower court that its trademark had acquired a secondary meaning in Georgia prior to the time that appellee commenced its advertising and sales in Georgia, nor did appellant so assert in any of the four defenses pleaded, nor did it seek by cross claim and injunction against appellees from using in Georgia the latter's trademark upon the basis that appellant had previously acquired the right to its use in the State of Georgia.

3. That case also (see p. 613) contains an expression to the effect that the court did

" * * * [F]ind incredible the suggestion that the identity between plaintiffs' and defendants' designs and use"

of plaintiff's trademark

"[W]as arrived at independently or by coincidence."