**BLUE BELL, INC., Plaintiff,**

v.

**Ken J. RUESMAN d/b/a Wrangler's Roost, Defendant.**

**Civ. A. No. 13217.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 26, 1971.

King & Spalding, Atlanta, Ga., Watson, Cole, Grindle & Watson, Washington, D. C., Richard Warren, Greensboro, N. C., for plaintiff.

Hendon & Henley, Decatur, Ga., for defendant.

## ORDER OF COURT

MOYE, District Judge.

Plaintiff has filed suit under the Lanham Act for alleged infringement of a registered trademark, and for unfair competition. Plaintiff seeks to enjoin defendant from further use of its trademark, but has not asked for damages.

██ The case is before the Court on plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The facts of the case are relatively simple, and summary judgment is appropriate, where, as here, the factual issue is not in dispute.

Plaintiff is a large diversified manufacturer of clothing and is the owner of eight registered trademarks, all evidencing various forms of the term "WRANGLER". Defendant operates a store in Decatur, Georgia, under the name of "THE WRANGLER'S ROOST", at which store he sells saddlery, tack, and items of clothing which appeal to horsemen.

Before entering into its findings and conclusions, the Court deems it appropriate to discuss several points of law.

Defendant contends that plaintiff is guilty of laches and is therefore not entitled to have its trademarks protected. Defendant asserts that plaintiff knew of and acquiesced in his use of the trademark. In defendant's deposition there is a vague reference to "somebody" from "Bluebell Company" coming in and taking "two looks at this Wrangler's Roost bit." (D–29). Defendant also said, however, in his affidavit in opposition to summary judgment that plaintiff's salesman called upon him on or about May 1, 1968. The warning letter was sent on January 23, 1969. Thus even imputing the knowledge of plaintiff's salesman to plaintiff, the delay in objecting was only some 20 months. Defendant has not raised a factual issue as to whether there was inexcusable delay or apparent acquiescence. *Cf.*, Ralston Purina v. Midwest Cordage Co., 373 F. 2d 1015, 54 C.C.P.A. 1213 (1967).

██ Additionally, plaintiff is not seeking damages or an accounting, but only injunctive relief. Laches *may* bar an accounting but is not a defense to a request for injunction. Youthform Co. v. R. H. Macy & Co., 153 F.Supp. 87 (N.D.Ga.1957). Finally defendant makes no factual issue of prejudice, which would be necessary to establish laches. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965); Ralston Purina Co. v. Midwest Cordage Co., supra.

██ Defendant also asserts that there is not sufficient likelihood of confusion to justify enjoining his use of the

trademark. All that is necessary to support an infringement action is a showing of likelihood of confusion, not actual confusion. World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482 (5th Cir. 1971). The Court may look at the trademark and the infringing mark for a visual comparison. National Association of Blue Shield Plans v. United Bankers Life Insurance Company, 362 F.2d 374 (5th Cir. 1966). Such a visual comparison compels the inference that there is a likelihood of confusion, Beef/Eater Restaurants, Inc., v. James Borrough Limited, 398 F.2d 637 (5th Cir. 1966), particularly since defendant's price tags saying "THE WRANGLERS' ROOST" are displayed on plaintiff's product, "WRANGLER" boots, and presumably, "WRANGLER" jeans.

Defendant in his unallowed amended answer[1] raised for the first time the defense of descriptiveness, relying on 15 U.S.C. § 1065(4). There is no merit to that defense, however, since "WRANGLER" is not descriptive of the products to which it is applied. In addition, plaintiff has established a strong secondary meaning in its trademark. This fact alone would be enough to overcome a descriptiveness defense. HMH Publishing Co., Inc. v. Turner, 222 F.Supp. 145 (N.D.Ga.1963), aff'd 380 F.2d 224 (5th Cir. 1967).

Finally, defendant implies that there can be no likelihood of confusion where plaintiff is a manufacturer selling at wholesale only and defendant is a retailer. It is not necessary that the parties be in competition or that the goods or services be identical. Continental Motors Corporation v. Continental Aviation Corporation, 375 F.2d 857 (5th Cir. 1967); Beef/Eater Restaurants v. James Borrough Limited, *supra*.

The Court adopts the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. This is an action for trademark infringement and unfair competition in which plaintiff has waived its claim for damages and seeks only injunctive relief.

2. Plaintiff, Blue Bell, Inc. (Blue Bell) is the owner of eight trademarks registered in the United States Patent Office under Registration Nos. 441,727; 517,844; 532,851; 778,794; 809,323; 824,965; 826,935; and 849,477. These registrations all evidence registration of the term WRANGLER in various forms for various items of wearing apparel.

3. Plaintiff is a Delaware corporation having a place of business at Atlanta Merchandise Mart, Atlanta, Georgia, and its principal place of business at Greensboro, North Carolina.

4. Defendant is a citizen of the State of Georgia and is doing business at 4916 Covington Highway, Decatur, Georgia, under the name "The Wrangler's Roost."

5. This Court has jurisdiction over the subject matter of the trademark infringement count of the Complaint under the Trademark Laws of the United States, and specifically 15 U.S.C. § 1051 et seq. and § 1121. Jurisdiction is also conferred under 28 U.S.C. §§ 1332 and 1338(a) with respect to the trademark infringement count and further, with respect to the count for unfair competition, under 28 U.S.C. § 1338(b). Venue is founded on 28 U.S.C. § 1391(b).

6. Plaintiff is the owner of the eight registrations for the trademark WRANGLER recited herein. Through its predecessor, plaintiff has alleged a first use of the trademark WRANGLER for western style dungarees and pants on or about January 19, 1929. On the basis of such use, plaintiff applied for registration of the trademark WRANGLER for such goods on May 17, 1947, and received its initial trademark registration, No. 441,727, on December 28, 1948. Subsequent to that initial registration of

---

1. Rule 15(a), Fed.R.Civ.P., provides that if more than 20 days have elapsed from the filing of a responsive pleading, a party may no longer amend as a matter of right.

the trademark WRANGLER, plaintiff registered that trademark in various forms, such as block letters and in a rope design, for other articles of clothing, including jackets, work shirts, work and casual wear socks, jeans, shirts, shorts, knee pants, hats, sneakers and boots. All of the eight certificates of trademark registration annexed to the Complaint and listed above are valid, unrevoked and uncanceled.

7. Plaintiff has submitted unchallenged proof with respect to sales of wearing apparel by it under the trademark WRANGLER. Since 1949, the first year for which sales figures have been submitted by plaintiff, the total sales by Blue Bell of WRANGLER branded garments was in excess of 20 million dozen. Plaintiff did not submit the dollar value of such goods from the period for 1949 to 1965; however, in the five-year period from 1965 to 1970, the sales value of wearing apparel sold by plaintiff under the trademark WRANGLER totaled more than $322,000,000.

8. Plaintiff's sales in 1949 totaled only 116,850 dozen garments, which were restricted to those intended for male use. Plaintiff's sales of WRANGLER garments have increased steadily although not uniformly from 1965 to 1970. In its fiscal year ending September 30, 1970, plaintiff sold more than 2,200,000 dozen articles of wearing apparel under the trademark WRANGLER, and these goods had a total value of in excess of $73,500,000.

9. The amounts plaintiff has spent in advertising its western wear and other wearing apparel under the trademark WRANGLER have increased in substantial accord with its sales of those goods. The first year for which plaintiff has submitted the amount of advertising expenditures is 1955, and in that year Blue Bell expended more than $490,000 in advertising WRANGLER branded goods out of a total advertising budget of $618,000. Advertising of WRANGLER wearing apparel generally increased until, in its fiscal year ending September 30, 1970, Blue Bell expended about $1,042,000 in advertising wearing apparel under the trademark WRANGLER. Since 1967 WRANGLER advertising by plaintiff has run at a rate of about $1,000,000 per year, and since 1955 Blue Bell has spent more than $11,000,000 in advertising wearing apparel under the trademark WRANGLER out of total advertising expenditures of more than $14,000,000.

10. The media in which Blue Bell has advertised WRANGLER branded goods has been wide, and plaintiff has submitted tear sheets in which the advertising medium has been directed to the general consumer market, e. g., Good Housekeeping Magazine, and more specialized markets, such as Western Outfitter, Clothes, and Teens and Boys Outfitter.

11. I find that due to the extensive sales and advertising by Blue Bell of various items of clothing intended for both male and female use and in connection with which the trademark WRANGLER has been used, such trademark is now recognized by the purchasing public as indicating the source or origin of plaintiff's wearing apparel and that the trademark WRANGLER, as applied to wearing apparel, has acquired a secondary meaning.

12. Defendant operates his business in Decatur, Georgia, as a sole proprietorship under the name or style, WRANGLER'S ROOST. Defendant had operated a shop under the name, Highway Furniture Shop, at the same address as he now operates his store, WRANGLER'S ROOST. In or about 1962 or 1963, defendant Ruesman first adopted the name WRANGLER'S ROOST and began selling tack and saddlery under that name. In 1966 he discontinued use of the name, Highway Furniture Shop.

13. While defendant began in business under the assumed name, WRANGLER'S ROOST, by selling only saddlery and tack, his store is now used to market dungarees, jeans, work shirts, jackets, dress shirts, hats and boots. In 1969 defendant first displayed his present sign, WRANGLER'S ROOST, on the outside of his store. Previously, in

or about 1966 or 1967, defendant had a tin sign above his storefront window. That tin sign was installed to replace the one designating his store as Highway Furniture Shop.

14. In 1970, among other articles of wearing apparel sold by defendant in his store, were boots manufactured by plaintiff under the trademark, WRANGLER. Ruesman purchased these boots from Blue Bell and resold them.

15. In addition to the large sign over his storefront, defendant uses the term WRANGLER'S ROOST on price tags, envelopes, letterheads, checks, and cashier's slips. Defendant has used price tags containing the term WRANGLER'S ROOST on its WRANGLER branded boots purchased from plaintiff.

16. Defendant has advertised in minimal amounts, particularly in comparison with the large amounts of advertising by plaintiff. At his deposition, the only display advertising Ruesman could recall was a display advertisement in the Atlanta Journal and Constitution of December 15, 1968, in which WRANGLER'S ROOST was used in a rope design. According to Ruesman, it may have been run three times. Defendant had a small number of classified ads in that paper and also did a small amount of radio advertising.

17. By his unallowed Amended Answer, Ruesman first alleged that Blue Bell was estopped by laches to assert its trademark WRANGLER against defendant because of delay in instituting the present action. According to the affidavit of Ken J. Ruesman submitted in opposition, plaintiff, through a salesman, first learned of defendant's infringement in May, 1968, and first protested such infringement in January, 1969. This action was instituted in November, 1969. Considering the averments of the Ruesman affidavit as correct, they raise no genuine issue as to any material fact, because the periods of time between knowledge and protest, and between knowledge and commencement of this action are insufficient to constitute laches, and, further, because by the Pretrial Order filed herein, plaintiff has specified that the only relief it seeks is an injunction against continued infringement.

18. Shortly after the present action was initiated on November 3, 1969, Ruesman changed the name of his store from WRANGLER'S ROOST to THE WRANGLER'S ROOST, apparently in an effort to avoid confusion. He also changed his WRANGLER'S ROOST price tags so that they then read, THE WRANGLER'S ROOST. He has destroyed the old price tags without the initial word, THE.

19. Defendant was notified by Blue Bell of its infringement of Blue Bell's registered trademarks by use of the term WRANGLER'S ROOST prior to institution of the present action. Defendant did not make any search of the Patent Office records prior to institution of the present action, nor prior to its first use of the term WRANGLER'S ROOST, and has continued to use that term, more recently preceded by the word, The, after such notification and after suit had been instituted. Defendant is presently using that term.

20. I find that there is a likelihood of confusion of the purchasing public by plaintiff's use of the term WRANGLER in connection with the articles of wearing apparel listed in its trademark registrations in suit and defendant's use of the term WRANGLER'S ROOST, whether or not preceded by the word, The, in connection with the sale of its wearing apparel. The term WRANGLER is the entirety of the trademark for which plaintiff has obtained trademark registration and which plaintiff uses in connection with the sale of its wearing apparel. The term WRANGLER is the primary and most essential part of the trade name or style used by defendant for his retail outlet for wearing apparel. Such likelihood of confusion is made all the more likely because Ruesman in his WRANGLER'S ROOST store sells WRANGLER boots manufactured by plaintiff, and applies his WRANGLER'S ROOST price tag to boxes that contain

plaintiff's WRANGLER boots. The purchasing public is likely to be confused, misled and deceived into the belief that defendant, when he uses the term WRANGLER'S ROOST, has been or is in some way associated or connected with plaintiff, or sponsored by or approved by plaintiff.

21. Because Blue Bell has advertised its wearing apparel under the trademark WRANGLER, and because it has sold WRANGLER branded articles of wearing apparel for so many years, the purchasing public of garments in a western style and otherwise have come to associate the term WRANGLER with wearing apparel that has a particular source or origin, although the purchasing public may not know that such source is Blue Bell. When the purchasing public, with such knowledge and identification, sees a store having a trade name or style in which the predominate part is the term WRANGLER and which sells the identical goods that have been associated with WRANGLER advertised and branded wearing apparel for many years, that purchasing public is likely to be confused and to believe that there is some association between the source of WRANGLER branded wearing apparel and defendant's store at which the same wearing apparel is sold. While plaintiff has proved no injury as a result of such confusion, plaintiff's reputation has been taken from its control and placed in the hands of defendant, whose acts and the quality of whose merchandise will then be attributed to or detract from plaintiff's reputation, established over many years and at the cost of millions of dollars of advertising.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the counts for trademark infringement and unfair competition herein under 15 U.S.C. § 1051 et seq. and 28 U.S.C. §§ 1332 and 1338(a) and (b). Venue is properly laid in this district under 28 U.S.C. § 1391(b).

2. Plaintiff having moved for summary judgment, and defendant having raised no genuine issue as to any material fact, the Court finds that this action is appropriate for disposition by summary judgment.

3. Plaintiff's eight trademark registrations recited hereinbefore, which registered the term WRANGLER in connection with various articles of wearing apparel, are valid and subsisting.

4. Plaintiff possesses valuable trademark rights in the term WRANGLER, and such registered trademarks have been infringed by defendant's use of the term WRANGLER'S ROOST or THE WRANGLER'S ROOST in connection with the sale of articles of wearing apparel sold at defendant's store.

5. By its continuous and exclusive use and extensive advertising over a period of many years of articles of wearing apparel in connection with which the term WRANGLER, has been used, plaintiff has established a secondary meaning in that term as indicating the source and origin of plaintiff's wearing apparel.

6. Defendant has unfairly competed with plaintiff by its sale of wearing apparel at its store under the trade name or style WRANGLER'S ROOST.

7. Plaintiff is entitled to a judgment permanently enjoining defendant from using the term WRANGLER or any similar name or variation thereof, whether alone or in conjunction with other terms, in any way in connection with defendant's present business or the sale of wearing apparel, and from further infringing plaintiff's trademark rights in the term WRANGLER and unfairly competing with plaintiff. Plaintiff having waived all claim to damages, no damages will be awarded.