**OLEG CASSINI, INC.**

v.

**CASSINI TAILORS, INC., and Ghassan Abdul Karim.**

**Civ. No. A–90–CA–24.**

United States District Court, W.D. Texas, Austin Division.

Dec. 10, 1990.

Leon Komkov, Milgrim, Thomajan & Lee, Austin, Tex. and Joseph F. Schmidt, Laff, Whitesel, Conte & Saret, Chicago, Ill., for plaintiff.

John M. Kyser, Salmanson, Smith, Travis & Schrager, P.C., Austin, Tex., for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is the Plaintiff's Motion for Summary Judgment and Brief in Support thereof, filed on August 15, 1990. Also before the Court is the Plaintiff's Motion for Leave to File Amended Declarations of Oleg Cassini and Marianne Nestor in Support of Plaintiff's Motion for Summary Judgment, filed on August 21, 1990. The Defendant filed a Response to Plaintiff's Motion for Summary Judgment on October 26, 1990, to which the Plaintiff filed a Reply on November 8, 1990. The Defendant filed a Motion for Leave to File Response to Plaintiff's Reply on November 21, 1990. The Court grants leave to both parties to file the declarations and the response requested, and the Court will consider all documents on file in this cause in rendering its decision.

This controversy arises under the trademark laws of the United States and under the common law of Texas. The Court has jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* (1982), specifically 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The Plaintiff has standing under section 32(1) of the Lanham Act, 15 U.S.C. § 1114 to prevent the infringement of its registered service marks. The Plaintiff claims that the Defendants have infringed on the Plaintiff's trademark under 15 U.S.C. § 1114(1)(a), have engaged in false designation of origin and false description under 15 U.S.C. § 1125(a), and have engaged in unfair competition under the common law of Texas.

The Plaintiff's causes of action are based on its claim that the Defendants' use of the name "Cassini" in the name of its custom tailor and design business, "Cassini Tailors," infringes on the Plaintiff's federal registrations and common law rights for its trademarks "CASSINI" and "OLEG CASSINI." Although the Defendants admit that they use the name "Cassini" in connection with custom tailoring and alteration of men's and women's clothing, they deny that such use infringes on the Plaintiffs rights. In their Motion for Summary Judgment, the Plaintiffs seek only to determine whether the Defendants' use of "Cassini" violates 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act and Texas common law. The Plaintiffs do not seek actual damages in the event that the Court finds that the Defendants have infringed on the Plaintiff's trademark.

The Plaintiff obtained its first United States Trademark Registration in 1957 for

the mark "OLEG CASSINI." The mark covered men's shirts and ties, women's dresses, coats and suits, and children's dresses and snowsuits. In the following years, the Plaintiff acquired nineteen additional trademark registrations for "OLEG CASSINI," "CASSINI," and other marks in which the name "Cassini" is the dominant feature. The marks cover a variety of clothing and clothing-related goods. As many as seven of the Plaintiff's trademarks have become incontestable under 15 U.S.C. § 1065. The Plaintiff's first four registrations, which are incontestable, cover a broad range of men's and women's clothing and accessories. The Plaintiff has provided the Court with extensive documentation of the widespread use of its marks in these markets.

 Under section 33(b) of the Lanham Act, 15 U.S.C. § 1115, the Plaintiff's service mark registrations constitute evidence of the Plaintiff's exclusive right to use its marks in commerce for the services covered by the registration, subject to the seven defenses enumerated in that section. *See e.g., Park 'N Fly Inc. v. Dollar Park & Fly*, 469 U.S. 189, 194–96, 105 S.Ct. 658, 661–63, 83 L.Ed.2d 582 (1985). The Plaintiff's federal registrations are at least *prima facie* evidence of its exclusive right to use the marks on the various clothing and clothing-related products set forth in the registrations, *see* 15 U.S.C. 1115(a), and further, the Plaintiff's exclusive right to use the marks "OLEG CASSINI" and "CASSINI" is conclusively established as a matter of law with respect to several of the registrations. *See* 15 U.S.C. § 1115(b); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–85 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Consequently, the Court agrees with the Plaintiff's assertion that the only issue for resolution by the Court is whether the Defendants' use of the name "Cassini" in connection with its custom tailoring and alteration business infringes on the Plaintiff's exclusive right.

 Trademark infringement occurs whenever, without consent of the registrant, a person uses in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The test for determining whether the Defendant has infringed on the Plaintiff's mark, therefore, is the likelihood of consumer confusion. *See Sun–Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 189 (5th Cir.1981); *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 669–70 (5th Cir.1975). Actual confusion is not necessary. *See Sun–Fun Products*, 656 F.2d at 191; *Frostie Co. v. Dr. Pepper Co.*, 341 F.2d 363, 366 (5th Cir.1965). Moreover, the likelihood of confusion is not limited to confusion as to the actual source of a product or service. The use of a name or mark that suggests an affiliation or connection with a trademark owner, or that causes a likelihood of confusion as to sponsorship or endorsement, also constitutes infringement. *See Professional Golfers Ass'n of America*, 514 F.2d at 669–70.

The Fifth Circuit has held that a variety of factors should be considered in determining whether a likelihood of confusion exists, including:

1. The strength of the plaintiff's mark;
2. The degree of similarity between the plaintiff's and the defendant's marks;
3. The similarity of the plaintiff's and the defendant's goods or services;
4. The nature of customers and retail outlets of the plaintiff and the defendant;
5. The similarities in advertising by the plaintiff and the defendant;
6. The defendant's knowledge and intent in adopting its mark; and,
7. Actual confusion as a result of the defendant's mark.

*See e.g., Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1980). It is not necessary to a finding of service mark infringement that a

majority of the factors be present in a given case. *See e.g., Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1159–60 (5th Cir.1982) (finding a likelihood of confusion based on strength of mark and actual confusion). The Court will consider each of the foregoing factors in turn to determine whether a likelihood of confusion exists, and then will consider the affirmative defense raised by the Defendant in its Response to the Plaintiff's Motion for Summary Judgment.

### 1. The Strength of the Plaintiff's Mark

 The strength of the mark depends upon its degree of arbitrariness in relation to the products or services with which it is used. The case law generally identifies four categories of marks to determine the appropriate scope of protection against infringement. In ascending order of protection, the categories are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *See Soweco,* 617 F.2d at 1183–84. A "generic" term is a common descriptive name for a type of product or service (e.g., "car," "bread," or "shoes"), and is entitled to no trademark protection. *See Soweco,* 617 F.2d at 1183. A "descriptive" term is one that directly describes a characteristic or ingredient of a product or service, and is entitled to protection only if it is shown to have acquired a degree of distinctiveness in identifying the plaintiff's product or service. *Id.* A "suggestive" term does not directly describe, but rather requires the exercise of thought or imagination to connect the mark to the corresponding product or service. *See Artcraft Novelties Corp. v. Baxter Lane Co.,* 685 F.2d 988, 991 (5th Cir.1982) (explaining that "Texas" is suggestive rather than descriptive of oversized products). A suggestive mark is entitled to protection without a showing of distinctiveness. *Id.* Finally, an "arbitrary" mark is one which neither describes nor suggests the nature of the product or service with

which it is used. It is, therefore, considered inherently distinctive, and is entitled to the broadest protection against infringement. *See Waples–Platter Cos. v. General Foods Corp.,* 439 F.Supp. 551, 576 (N.D.Tex.1977); *see also Armco, Inc. v. Armco Burglar Alarm, Inc.,* 693 F.2d 1155, 1159 (5th Cir.1982).

 Because the terms "CASSINI" and "OLEG CASSINI" do not describe or suggest the nature of the Plaintiff's products, and are not generic terms, the Court finds that the Plaintiff's mark is arbitrary in connection with its products. Therefore, the Plaintiff's mark is entitled to the broadest protection against infringement.

As previously stated, the Plaintiff in its Motion has provided the Court with vast documentation to support the strength of its trademark. The Defendant does not dispute the strength of the mark, and in fact, seems to rely on the strength of the Plaintiff's mark in many of its arguments.[1] Therefore, the Court is not inclined to elucidate further on the strength and distinctiveness of the mark, and instead, takes judicial notice of the Plaintiff's widespread use of its mark across the United States beginning in the 1950s and continuing to the present.

### 2. Similarity of the Marks

 The appropriate test for determining whether two marks are confusingly similar is not a side-by-side comparison of the details of the respective marks. Instead, the proper test is whether the average consumer is likely to confuse or associate the defendant or his services with the plaintiff in the isolated context of the marketplace, assuming the consumer has only a general recollection of the plaintiff's mark. *See James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976); *Nat. Ass'n of Blue Shield*

---

1. For example, the Defendant states that the Plaintiff "theorizes, without justification, that in light of the extensive fame of Plaintiff's founder, Oleg Cassini, it must automatically be assumed that a small, one shop tailor operation in Austin, Texas would cause or be likely to cause confusion to potential customers. To the contrary,

such glaring differences between the two operations only serve to reenforce Defendants' claims that no such confusion could be reasonably expected to result from the Defendants' business." *Defendants' Response to Plaintiff's Motion for Summary Judgment,* at 3.

*Plans v. United Bankers Life Insurance,* 362 F.2d 374, 376 (5th Cir.1966). Identity of the marks is thus unnecessary to establish infringement; the test is one of "resemblance rather than identity." *See Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 315 F.Supp. 45, 50 (S.D.N.Y. 1970), *aff'd,* 437 F.2d 566 (2d Cir.1971).

■■■ The dominant feature of a name or mark is of most significance in gauging the likelihood that consumers will confuse the defendant for an entity that is affiliated with the plaintiff. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1166 (11th Cir.1982); *James Burrough Ltd.,* 572 F.2d 574, 577 (7th Cir.1978); *American Auto Ass'n v. AAA Insurance Agency, Inc.,* 618 F.Supp. 787, 793 (W.D.Tex.1985). In fact, courts have granted summary judgment in cases involving a defendant that adopted as the dominant part of its name a term that was substantially identical to the plaintiff's mark. *See e.g., Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637 (5th Cir.1968). Court have also held that the presence of additional words of a common descriptive nature—such as "Discount Store" or "Insurance Agency"—does not dispel the likelihood of confusion. *See Safeway Stores, Inc.,* 675 F.2d at 1166; *American Auto Ass'n,* 618 F.Supp. at 793. In fact, "the presence of additional words describing services related to those of Plaintiff actually increases the likelihood that consumers will conclude mistakenly that Defendant is connected with or licensed by the Plaintiff." *American Auto Ass'n,* 618 F.Supp. at 793.

In the instant case, the dominant feature of the Defendants' name—"Cassini Tailors"—is the name "Cassini." The dominant feature is, therefore, identical to the dominant feature of the Plaintiff's registered trademark. The Defendants assert in their Response that the Plaintiff did not acquire service mark registration for the term "Cassini" alone until July 23, 1985. The Defendants used the term "Cassini" in connection with their custom tailoring and alteration business beginning in 1972. The Defendants contend that, because the name

"Cassini Tailors" was used in connection with their business prior to the Plaintiff's registration of the term "Cassini" alone, the Defendants' use of the name did not infringe on the Plaintiff's rights. The Defendants state that "Oleg Cassini initially chose to trademark his full name as a symbol of identification for the products designed, manufactured, and distributed by him. On the other hand, the term 'Cassini Tailors' denotes an entirely different representation, indicating a tailoring service rather than a product associated with a specific individual." *Defendants' Response to Plaintiff's Motion for Summary Judgment,* at 6.

Although "registration is a predicate to its protection under the Lanham Act, the underlying right [to protection against trademark infringement] depends not on registration but rather on use. [citations omitted]" *Basile S.p.A. v. Basile,* 899 F.2d 35, 37 n. 1 (D.C.Cir.1990). The Plaintiff has provided the Court of more than ample evidence to support its use of the term "Cassini" alone in connection with the sale of its products since 1957. Even without such evidence, however, the Court concludes that the dominant feature of the Defendants' name is identical to the dominant feature of the Plaintiff's trademarks. The Court reaches this conclusion even if it considers only the Plaintiff's 1957 registration of the term "OLEG CASSINI."

The case law establishes broad protection for trademarks involving the name of an individual: "Once an individual's name has acquired a secondary meaning in the marketplace, a later competitor who seeks to use the same or similar name must take reasonable precautions to prevent the mistaking of the two competitor's goods." *Basile, S.p.A.,* 899 F.2d at 37 (involving trademark of fashion designer's personal name). *Accord Nina Ricci S.A.R.L. v. E.T.F. Enterprises Inc.,* 889 F.2d 1070 (Fed.Cir.1989); *Planter's Nut & Chocolate Co. v. Crown Nut Co.,* 50 CCPA 1120, 305 F.2d 916 (1962).

### *3. Similarity of Products and Customers*

■ With respect to the third and fourth of the above-mentioned tests, courts

repeatedly have held that neither direct competition between parties nor identity of products or services is necessary for infringement to occur. *See Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 669–70 (5th Cir.1975) (and cases cited therein). Rather, the question is whether the products or services of the defendant are sufficiently related to those of the plaintiff to cause consumer confusion if both entities sell their products or services under a similar name.

Since the early 1950s, the Plaintiff has engaged in the business of designing, marketing and promoting clothing apparel for men, women, and children, in addition to fragrances and many other products in Texas and across the United States. The Plaintiff also licenses other entities to use its trademarks in connection with the sale of a variety of clothing and other goods. Defendant Cassini Tailors is a Texas corporation located in Austin, Texas, which engages in the business of custom tailoring and alteration of suits for men and women.

The Defendants stress the distinction between the Plaintiff, a "corporate giant," and Defendant Cassini Tailors, "a small family owned tailor shop." The Court acknowledges the distinction pointed out by the Defendants, but notes that the relevant inquiry is the likelihood of consumer confusion between the two entities. Both the Plaintiff and Defendant Cassini Tailors participate in the clothing and apparel business—the Plaintiff as a designer and marketer of its lines of clothing and other goods, and the Defendant as a tailor of clothing. The distinction between the goods and services offered by the two entities may be clear to the Defendant and to those who have done business with Defendant Cassini Tailors in the past, but the Court must determine whether a consumer is likely to confuse the Defendant for an entity affiliated with the Plaintiff based on the similarity of the dominant feature of their names: Cassini.[2] For purposes of this inquiry, the Court finds based on all the evidence before it that the goods and services offered by the Defendant are sufficiently related to the Plaintiff's products so as to generate a likelihood of consumer confusion.

The Plaintiff serves a national market, whereas the Defendant operates from only one location, and primarily serves customers in Austin, Texas and the surrounding area.[3] Although the Plaintiff operates in a much larger geographical area than the Defendant and serves a national customer base, the Defendants' customer base in Austin is basically the same as that of the Plaintiff in the Austin area. Although the Defendants' aggregate customer base may be slight in comparison to that of the Plaintiff, the Court finds it likely that customers who know of and buy products under the "OLEG CASSINI" mark are the same customers who might use the Defendants' products or services.

### 4. Similarities in Advertising Media

The Plaintiff states in its Motion that it and its licensees have expended millions of dollars since 1960 to advertise and promote "CASSINI" and "OLEG CASSINI" products throughout the United States in nationally circulated magazines, on national television, at fashion shows throughout the United States, in national newspapers, and in local newspapers, including Texas newspapers. The Plaintiff's products also appear in advertisements for national department stores.

Defendant Cassini Tailors has advertised in local newspapers, and on local radio and television stations. Although the Defendant does not engage in the same type of widespread national advertising as the

---

**2.** Although tailored suits and shirts differ in some respects from clothes that are designed and produced in mass, the Defendants do make available their clothes for ordinary purchasers of those goods, and do not merely provide alteration services.

**3.** The Plaintiff asserts repeatedly in its Motion that the Defendant also serves customers elsewhere in Texas and throughout the United States. The Court does not find this claim to be necessary to its finding an overlap in the customer bases of the Plaintiff and the Defendant, however.

Plaintiff, the Defendants' advertising in the Austin area is similar to that of the Plaintiff in the same area, which the Court finds to be the relevant inquiry on this point.

### 5. Defendants' Knowledge and Intent

 An accused infringer's knowledge or intent in adopting or using a particular mark is another factor bearing on the question of infringement. Its presence weights heavily against an accused infringer, but its absence does not excuse his actions. *See Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596–97 (5th Cir.1985).

 In the present case, the Defendants claim to have adopted the name "Cassini Tailors" without intent to infringe on the Plaintiff's trademark or to mislead the public. Specifically, the Defendants content that they adopted the name "Cassini" because it means "clothe me" in the spoken dialect of Big Syria, the native language of Defendant Karim. The Plaintiff does not suggest that the Defendants intended to infringe on the Plaintiff's trademark.

The Court finds no evidence of knowledge or intent to infringe by the Defendant, but finds the absence of such knowledge or intent to be of little significance in the determination of this cause.

### 6. Actual Confusion

 Because the test of trademark infringement is the "likelihood of confusion," evidence of actual confusion is not required. *See Sun–Fun Products Inc. v. Suntan Research & Dev. Inc.*, 656 F.2d 186, 191 (5th Cir.1981). Reliable evidence of actual confusion is "almost impossible to secure," *see Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 761 (2d Cir.1960), so the absence of such evidence does not affect a trademark owner's right to relief if the remaining evidence proves a likelihood of confusion.

 The Defendant has offered evidence consisting of the affidavit testimony of certain individuals to the effect that they are not confused by the similarity of the Defendants' name with the Plaintiff's trademarks, and that they do not believe a likelihood of consumer confusion exists as to the respective products and services of the Plaintiff and the Defendants. The Court does not find such evidence helpful, however, in analyzing whether a likelihood of consumer confusion exists, or furthermore, in analyzing whether *actual* confusion exists. That certain individuals are not confused does not convince the Court that other consumers will not be confused when other factors suggest a confusing similarity between the names, products, and customers of the two entities involved.

### SUMMARY JUDGMENT

 Having considered all of the factors recommended by the Fifth Circuit for cases involving allegations of trademark infringement, as well as the arguments, evidence, and affidavits offered by the respective parties, the Court is of the opinion that no genuine issues of disputed fact exist which prevent the Court from deciding the merits of this case based on the summary judgment evidence in the record at this time. Federal Rule of Civil Procedure 56(c) allows the Court to resolve a case by summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some alleged factual dispute will not defeat an otherwise properly supported motion, as the requirement is that there be "no *genuine* issue of *material* fact." *Id.* at 247, 106 S.Ct. at 2510 (emphasis supplied). The function of the Court is to determine whether sufficient evidence exists favoring the nonmoving party for a jury to return a verdict for that party, and all reasonable doubts must be resolved in favor of the nonmoving party if any unresolved fact issues are present. *See Hill v. Linahan*, 697 F.2d 1032 (11th Cir.1983).

 The Defendant claims that several fact issues remain in dispute. For example, the Defendant lists as facts in contro-

versy "the differences in the types of trademarks at issue, the similarity between the parties [sic] marks, the similarity between the products or services upon which the marks are used, the identity of purchasers and sales outlets, and the identity of advertising media utilized. Further, it is uncontroverted that Defendants have not now nor have they ever intended to confuse the public as to the nature and or its origin of its business. Also, the testimony before this Court and the testimony, which, if presented at trial, would clearly indicate that there is a lack of actual confusion in the Austin, Texas marketplace with respect to the usage of the two names." *Defendants' Response to Plaintiff's Motion for Summary Judgment*, at 13. Additionally, the Defendants argue that "Plaintiff's Summary Judgment evidence used to support its position that there is a likelihood of such confusion as a matter of law consists solely of the declarations of Oleg Cassini and Marianne Nestor, the Corporate Secretary of Oleg Cassini, Inc. As such, the evidence of Plaintiff is therefore clearly insufficient to establish any likelihood of such claimed confusion as a matter of law. There is no attempt to show that Mr. Cassini or Ms. Nestor have any specialized or any particular knowledge of the Austin, Texas business community nor is there any other competent Summary Judgment evidence put before the Court which would justify the finding of such likelihood of confusion as a matter of law." *Id.* at 7.

Contrary to the Defendants' position, the Court does not find any of the "disputed" fact issues to preclude the Court's rendering a verdict based on the evidence before it. Further, the Court is of the opinion that the Defendants' arguments regarding the Plaintiff's summary judgment evidence reflect a misunderstanding of the nature of the law on trademark infringement. As noted previously, the Fifth Circuit has promulgated a list of factors for the district courts to consider in making a determination of whether a likelihood of confusion exists in a given case, *see e.g., Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir.1980) *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), and

this Court has followed the Fifth Circuit guidelines here. The Defendants' suggestion that the summary judgment evidence before the Court consists solely of the affidavits of Oleg Cassini and Marianne Nestor is simply incorrect. As the Fifth Circuit stated in *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.,* 398 F.2d 637 (5th Cir.1968): "Appellant in contending that no witness testified as to the likelihood of confusion overlooks the principle of law that the trial judge, by inspection of the trademarks, may himself determine, and must determine, the likelihood of confusion. [citations omitted]" *Id.* at 639 (upholding trial court's summary judgment in favor of the plaintiff in trademark infringement case).

Based on the factors listed in *Soweco, supra,* the Court finds that the merits of this case are resolved most appropriately by summary judgment. The Court has considered the arguments presented by both parties as to the types of trademarks at issue; the similarity between the marks of the respective parties; the similarity between the products or services of the respective parties; the identity of customers and sales outlets; and the type of advertising used by the respective parties. The Court finds that the Plaintiff's mark is a very strong one; that the dominant feature of the Defendant's name is identical to that of the Plaintiff; that both the Plaintiff and the Defendant engage in the clothing and apparel business with the same or similar potential customers; and that, within the Defendant's geographical market, the Plaintiff and the Defendant advertise with similar modes to basically the same potential customer base. The Court has presented its analysis of each of the foregoing issues, and is of the opinion that further evidence is unnecessary on these points. As to the Defendant's knowledge or intent and the lack of actual confusion, the Court would not find any further evidence instructive on these points as they are not material to a resolution of this case.

### AFFIRMATIVE DEFENSE

The Defendant argues in its Response that the Plaintiff's failure to

bring an action for trademark infringement until 1988, after the Defendant had operated its business under the name "Cassini Tailors" since 1972, violates the doctrine of laches. The Defendant claims that it offers evidence in its Response that at least raises a fact issue as to whether the Plaintiff had knowledge prior to 1988 of the Defendants' use of the name "Cassini" for its business. The Defendants offer the affidavit testimony of Defendant Karim and his former employee Rebecca Sanchez who states that she received a telephone call in 1972 from a representative of the Plaintiff regarding the Defendants' use of "Cassini" in its name as evidence that the Plaintiff had knowledge of the Defendants' existence in 1972. Even if the Plaintiff did not have actual knowledge, the Defendants argue that the Plaintiff should have known of the existence of Cassini Tailors because of its numerous advertisements in the Austin American Statesman in the years prior to 1988, when the Plaintiff claims to have first become aware of the business.

In response to the affirmative defense raised by the Defendants, the Plaintiff argues first that the testimony of Defendant Karim is inadmissible hearsay. The Court agrees with the Plaintiff on this point and therefore does not consider his statement on this matter. However, the Court does find that a fact issue exists based on the affidavit of Rebecca Sanchez.

## CONCLUSION

Based on the notable strength of the Plaintiff's trademark, the identity of dominant features in the Plaintiff's and Defendants' marks, the similarity of products and the general overlap of customers within the geographic area of the Defendants' advertising and rendering of services, the Court finds a likelihood of consumer confusion based on the Defendants' use of the name "Cassini" as the dominant feature in the name of its business. However, as previously stated, the Court is unable to enter its decision on the merits because a fact issue has been created by the testimony of Rebecca Sanchez. Therefore, the Court will enter a partial summary judgment in accordance with its findings and conclusions as set out herein, and the parties are instructed that the issue of laches remains to be determined.

ACCORDINGLY, IT IS ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED in that the Court finds the Defendants' use of the name "Cassini" to infringe on the federal trademark registrations and common law rights of the Plaintiff. The Plaintiff's Motion for Summary Judgment is DENIED insofar as a fact dispute exists as to the Defendant's affirmative defense of laches.